UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                        :
UNITED STATES OF AMERICA,                               :
                                                        :
         - against -                                    :
                                                        :                23-CR-134 (VSB)
DARRYL COHEN,                                            :
                                                        :                **OPINION & ORDER**
                                   Defendant.           :
                                                        :
--------------------------------------------------------X

<u>VERNON S. BRODERICK</u>, United States District Judge:

Defendant Darryl Cohen ("Defendant" or "Cohen") is charged with wire fraud

conspiracy, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. §§ 1343 & 2;

and investment advisor fraud, in violation of 15 U.S.C. §§ 80b-6 & 80b-17.  (Doc. 2 ("Ind.").)[1]

Before me is Defendant's motion to dismiss the indictment.  Defendant argues that the

indictment must be dismissed because (1) the Government "cannot meet the constitutional

requirements to establish venue in this District for any of the three charges," (Doc. 242 ("Mot.")[2]

at 7–32); (2) the indictment is "impermissibly duplicitous," as it combines multiple "distinct

crimes into one count," (*id.* at 32–38); and (3) the life insurance policies that the Government

alleges the Defendant fraudulently induced the athletes into purchasing are not encompassed by

the federal wire fraud statute, (*id*. at 38–52).  Because I find that the Government has met its

burden to allege venue at this stage, that the indictment is not "impermissibly duplicitous" under

governing law, and that the government adequately alleges that Defendant's conduct is

encompassed by the federal wire fraud statute, Defendant's motion is DENIED.

---

[1] "Ind." refers to the indictment, 23 Cr. 134, (Doc. 2), unsealed on March 23, 2023.

[2][2] "Mot." refers to "Defendant's Motion to Dismiss the Indictment."  (Doc. 242.)

## I.    **<u>Background</u>**

On March 13, 2023, a sealed indictment was returned against Defendant Darryl Cohen and his three co-conspirators, Calvin Darden, Jr. ("Darden"), Charles Briscoe ("Briscoe"), and Brian Gilder ("Gilder").  (*See* Ind.)  In the indictment, the Grand Jury charged Cohen, a financial advisor at a financial institution ("Financial Institution-1"), with defrauding three professional basketball players out of over $5 million dollars by taking advantage of his fiduciary relationships with these clients.  (*Id.* ¶ 2.)  According to the indictment, Cohen engaged in three courses of conduct:  (1) "fraudulently induc[ing] [three athletes] to purchase viatical life insurance policies at massive markups"; (2) "fraudulently divert[ing] from the accounts of Athletes-2 and -3 approximately $500,000 in purported donations to non-profit organizations"; and (3) "misappropriat[ing] money from Athlete-2 and us[ing] those funds to repay another client of [Defendant Cohen's]."  (*Id.*)

The conspiracy allegedly began in 2017, when Defendant Cohen and his co-conspirator Gilder induced the first professional basketball player ("Athlete-1") to enter into a contract to purchase a viatical life insurance policy from a law firm that Gilder "exercised a substantial degree of control over," at a "massive markup."  (*Id.* ¶¶ 5–8.)  Gilder and Cohen did not disclose Gilder's connection to this law firm, nor did they disclose that the money paid for the insurance policy "would go to benefit Cohen and Gilder."  (*Id.* ¶¶ 8–10.)  Defendants Gilder and Cohen likewise allegedly defrauded a second athlete ("Athlete-2") and a third athlete ("Athlete-3") by charging "massive markup[s]," (*id.* ¶¶ 11–22), on viatical life insurance policies without disclosing their relationships to these policies or where the proceeds would go.[3]  (*Id.*)

---

[3] Athlete-1, Athlete-2, and Athlete-3 are collectively referred to as the "Victim Athletes."

The second course of conduct consisted of Cohen allegedly directing transfers from Athlete-2 and Athlete-3's accounts at Financial Institution-1, where he worked, into a non-profit that he claimed was for "underprivileged kids."  (*Id.* ¶¶ 25–30.)  In reality, the indictment alleges that nearly half of these funds were used "to build athletic training facilities" in the back of Defendant Cohen's home.  (*Id.* ¶ 29.)

Finally, Cohen allegedly misappropriated $235,000 in funds from Athlete-2 to pay back investments and loans that Cohen had made on behalf of a fourth Athlete client of his ("Athlete-4").  (*Id.* ¶¶ 31–34.)  Cohen set up a sports agency with Gilder, Briscoe, and Darden using funds mostly provided by Athlete-2.  (*Id.* ¶ 36.)  Cohen and Gilder allegedly misappropriated approximately $93,125 from the agency to pay back loans from Athlete-4 with wires passing through the Southern District of New York.  (*Id.* ¶¶ 35–42.)  The indictment charges Defendant Cohen with one count of conspiracy to commit wire fraud, (*id.* ¶¶ 57–59), one count of wire fraud, (*id.* ¶¶ 60–61), and one count of investment advisor fraud, (*id.* ¶¶ 62–63), all of which constituted "a scheme to defraud" Victim Athletes, (*id.* ¶¶ 59, 61, 63).

On March 23, 2023, the indictment was unsealed, and arrest warrants were issued as to Cohen, Gilder, Briscoe, and Darden.  (Docs. 4–7.)  On April 18, 2023, Cohen, Gilder, Briscoe, and Darden were arraigned on the indictment.  (Doc. 33.)

On October 12, 2023, Gilder pled guilty to a superseding information charging him with conspiracy to commit wire fraud.  (Docs. 74–78.)  On November 8, 2023, Briscoe pled guilty to a superseding information charging him with conspiracy to commit wire fraud.  (Docs. 82–83, 87–88.)  On October 4, 2024, Darden was found guilty after a jury trial of charges contained in a superseding indictment:  conspiracy to commit wire fraud; wire fraud; bank fraud; conspiracy to commit money laundering; and money laundering.  (Doc. 192.)

On January 10, 2025, Cohen filed his motion to dismiss.  (Mot.)  On February 21, 2025, the Government filed its memorandum opposing Defendant's motion to dismiss.  (Doc. 260 ("Opp.").)  On March 14, 2025, Cohen filed his reply memorandum in support of his motion to dismiss.  (Doc. 265 ("Reply").)  Cohen's Motion to Dismiss is DENIED for the reasons that follow.

## II.    <u>Legal Standard</u>

A defendant may move to dismiss an indictment for failure to state an offense.  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  Rule 7 of the Federal Rules of Criminal Procedure requires that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c); *see United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) ("A criminal defendant is entitled to an indictment that states the essential elements of the charge against him.").  This is not a high bar, as "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)).

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights."  *United States v. Avenatti*, 432 F. Supp. 3d 354, 360 (S.D.N.Y. 2020) (quoting *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001)).  However, "[s]ince federal crimes are 'solely creatures of statute,' a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute."  *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) (quoting *Dowling v. United States*, 473 U.S. 207, 213 (1985)).

"[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Alfonso*, 143 F.3d at 777.  Thus, "[i]n reviewing a motion to dismiss an indictment, the Court must take the allegations of the indictment as true." *Avenatti*, 432 F. Supp 3d at 360–61 (first citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952); and then citing *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004)).

### III.    Discussion

#### A.    *Venue is Properly Alleged at this Stage of the Litigation*

"Courts in this Circuit have generally reserved judgment on criminal venue for trial.  At the motion to dismiss stage, courts assess only the facial sufficiency of the indictment as to venue." *United States v. Mackey*, 652 F. Supp. 3d 309, 323 (E.D.N.Y. 2023).  When analyzing "the facial sufficiency of the indictment as to venue," *id.* (citing *Alfonso*, 143 F.3d at 776–77), courts will "review the sufficiency of the evidence as to venue in the light most favorable to the government, crediting 'every inference that could have been drawn in its favor.'" *United States v. Tzolov*, 642 F.3d 314, 318 (2d Cir. 2011) (quoting *United States v. Rosa*, 17 F.3d 1531, 1542 (2d Cir. 1994)).  When venue is challenged on a motion to dismiss, the Government need only show "the indictment alleges facts sufficient to support venue." *United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005) (citing *United States v. Szur*, No. 97-CR-108, 1998 WL 132942, *9 (S.D.N.Y. Mar. 20, 1998)).  "Whether such acts alleged in the Indictment in fact occurred in the Southern District of New York is appropriately left for trial, at which time the Government will be required to prove by a preponderance of the evidence 'that the crime was committed in the district in which the prosecution was brought.'" *Szur*, 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998) (quoting *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989), *cert. denied sub nom., Lavery v. United States*, 493 U.S. 933 (1989)).

Because "venue must be proper with respect to each count," *Beech-Nut Nutrition*, 871 F.2d at 1188, I address each count in turn below.

### 1.    Venue – Conspiracy to Commit Wire Fraud

Under 18 U.S.C. § 1341 *et seq.*, "venue lies where a wire in furtherance of a scheme begins its course, continues or ends." *United States v. Rutigliano*, 790 F.3d 389, 397 (2d Cir. 2015). "Venue is also proper in any district through which electronic communications in furtherance of the conspiracy pass." *Mackey*, 652 F. Supp. 3d at 326 (collecting cases). That a defendant "caused communications to be transmitted into and out of the Southern District," even without sending the wires himself, is sufficient to support venue at the motion to dismiss stage. *United States v. Kim*, 246 F.3d 186, 192 (2d Cir. 2001). "Thus, a defendant need not himself have ever been physically present in a district for a conspiracy charge against him to be venued there." *United States v. Rommy*, 506 F.3d 108, 120 (2d Cir. 2007).

"[O]n occasion [the Second Circuit] ha[s] supplemented [its] venue inquiry with a 'substantial contacts' test that takes into account a number of factors." *United States v. Lange*, 834 F.3d 58, 71 (2d Cir. 2016) (quoting *Rutigliano*, 790 F.3d at 399). However, "[v]enue is proper for conspiracy charges 'in any district in which an overt act in furtherance of the conspiracy was committed.'" *Id.* at 70 (quoting *Tzolov*, 642 F.3d at 319–20). "When an overt act in furtherance of a criminal conspiracy has been committed in the district, [] this supplemental inquiry has no relevance." *United States v. Kirk Tang Yuk*, 885 F.3d 57, 70 (2d Cir. 2018) (collecting cases).

Here, the Government plainly alleges that "an overt act in furtherance of a criminal conspiracy was committed in this District." (Opp. 18–19.) An overt "act need not be unlawful; it can be any act, innocent or illegal, as long as it is done in furtherance of the object or purpose

of the conspiracy." *Tzolov*, 642 F.3d at 320. This is sufficient for the Government to meet its burden to allege venue as to the conspiracy charge.

Defendant expends significant space in his reply attempting to distinguish the facts of *United States v. Kim* from the instant matter, arguing that because the wires in *Kim* "originated" "at a bank located in the District" rather than passing through a bank located in the District, an overt act is not sufficiently alleged. (Reply 10.) However, Defendant fails to establish why this distinction is legally significant. Indeed, the law does not make this distinction when assessing whether venue exists. As 18 U.S.C. § 3237(a) clearly lays out, wire fraud is a "continuing offense" and "may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." In other words, the continuation of a wire transfer is as much an "act" in continuation of a conspiracy as the beginning or completion of a wire transfer.

Contrary to the Defense's argument, (*see* Mot. at 17–18; Reply at 11–12), *United States v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001), does not hold otherwise. As an initial matter, the legal issue addressed in *Ben Zvi* was the statute of limitations, not venue. *Id.* at 93. In *Ben Zvi*, the court found that a later in time wire transfer could not restart the statute of limitations for a wire fraud conspiracy because it "did not involve or otherwise turn on any identifiable act or omission of the conspirators as of the time of the wire transfer," because the transfer was conducted by underwriters at "Lloyd's" without any timely "affirmative conduct or deliberate omission on the part of Ben Zvi or her coconspirators." *Id.* at 97. It is telling that Defendant cites no caselaw, and indeed I am not aware of any, importing the *Ben Zvi* language from the statute of limitations context to an analysis of venue. *Ben Zvi* does not hold that, as a matter of law, an innocent agent's act cannot constitute an overt act, but only that an innocent agent's act, if not caused by timely predicate conduct by a defendant or co-conspirator, cannot suffice to restart the statute of

limitations in and of itself. *See United States v. Birks*, 656 F. Supp. 2d 454, 461 n.6 (D.N.J. 2009) (rejecting a similar attempt to transpose the *Ben Zvi* holding from the statute of limitations context into venue analysis); *United States v. Johnson*, 165 F.2d 42, 45 (3d Cir.1948) ("[A]n innocent act by a third party, if caused by previous act or contact on the part of one of the conspirators, would be enough" to demonstrate an overt act).

Even if the statute of limitations analysis in *Ben Zvi* were applicable here, which I do not find to be the case, the Government specifically alleges that Cohen and his co-conspirators knowingly used wires passing through the Southern District. (Opp. 15–16.) The Government claims that these wires involved and turned on the specific conduct taken by Cohen and his co-conspirators in furtherance of their conspiracy. (*See id*. at 17 ("[T]he defendant repeatedly texted other individuals . . . wiring instructions includ[ing] the address of the correspondent bank in New York, New York.").) The statute of limitations analysis borrowed from *Ben Zvi* does nothing to dissuade me from the conclusion that the Government has sufficiently alleged an overt act in furtherance of the conspiracy at this stage of the litigation, rendering the substantial contacts test superfluous and unnecessary for the conspiracy charge.

As Defendant concedes, Second Circuit caselaw is unclear as to whether there is an independent foreseeability requirement over and above any possible substantial contacts test as applied to venue allegations. (*See* Mot. 25, n. 8.) In one Second Circuit case from 2018, the court, on a post-trial motion, analyzed whether "a reasonable jury could find that it was 'more probable than not' that the defendant 'reasonably could have foreseen' that part of the offense would take place in the district of prosecution." *Kirk Tang Yuk*, 885 F.3d at 70 (quoting *United States v. Davis*, 689 F.3d 179, 186 (2d Cir. 2012)). In some cases, however, the reasonable foreseeability test has been subsumed into the substantial contacts inquiry. *United States v.*

*Calonge*, 74 F.4th 31, 31 n. 1 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 409 (2023) ("The substantial contacts test 'asks whether the acts' occurrence in the district of venue would have been reasonably foreseeable to the defendant") (quoting *Davis*, 689 F.3d at 186); *see also United States v. Riley*, No. 13-CR-339, 2014 WL 53440, at *4 (S.D.N.Y. Jan. 7, 2014) (merging the substantial contacts and foreseeability inquiries).

Either way, I find that the Government has sufficiently shown that a reasonable jury could conclude that venue in the Southern District is foreseeable such that dismissal would be inappropriate. *See United States v. Hwa*, No. 18-CR-538, 2021 WL 11723583, at *22 (E.D.N.Y. Sept. 3, 2021), *aff'd*, --- F.4th ---, No. 23-6333, 2025 WL 3492484 (2d Cir. Dec. 5, 2025) (determining that "whether it was foreseeable to [the defendant] that electrical communication and wires would pass through and/or transit through the Eastern District of New York, is a factual question reserved for trial."). Other courts in this Circuit have found that an "argument that hinges on the factual question of what was, or was not, reasonably foreseeable to" a defendant accused of illicitly causing wires to pass through the District is not properly made in a pre-trial criminal motion. *United States v. Murgio*, 209 F. Supp. 3d 698, 721 (S.D.N.Y. 2016) (determining that such an argument regarding whether wire transfers are sufficient to confer venue "raise[d] questions reserved for trial"); *see also United States v. Louissaint*, No. 12-CR-6081, 2016 WL 3145145, at *10 (W.D.N.Y. June 3, 2016) ("[F]actual disputes . . . whether defendants could reasonably foresee the use of the wires . . . make the issue of venue inappropriate for pretrial determination.")

This case is analogous to *Murgio* and *Louissaint*. The factual question of whether Cohen could have reasonably expected to have been hauled into court in New York is one that will turn on the sufficiency of the evidence presented by the Government at trial, some of which is

9

adduced in the Government's opposition brief.  (Opp. 14–18.)[4]  Indeed, the prospect of a full

hearing on the sufficiency of the evidence on venue is the precise reason why most courts in this

Circuit reject pre-trial motions to dismiss as to venue.  *See, e.g.*, *United States v. Rogers,* No. 90-

CR-377, 1991 WL 90797, at *3 (S.D.N.Y. May 21, 1991) ("It is up to the government to prove

these allegations at trial and it is premature to decide the question of venue without hearing that

proof."); *Murgio*, 209 F. Supp. 3d at 721 ("Although the Government must 'demonstrate the

propriety of the chosen venue by a preponderance of the evidence' at trial, courts apply a more

liberal standard when assessing whether an indictment's venue allegations survive a pre-trial

motion to dismiss." (quoting *United States v. Motz*, 652 F. Supp. 2d 284, 290 (E.D.N.Y. 2009))).

At trial, the Government will bear the burden of demonstrating venue, although it "need

only establish it by a preponderance of the evidence."  *Hwa*, 2021 WL 11723583, at *22

(internal quotation marks omitted).  Since the question of whether the Government can meet its

burden to show that it is "'more probable than not' that the defendant 'reasonably could

have foreseen' that part of the offense would take place in the district of prosecution," *id.* (citing

*Kirk Tang Yuk*, 885 F.3d at 70), is a "factual question," typically "reserved for trial," *id,* at this

pre-trial stage of proceedings, the Government's allegations suffice for it meet its burden of

---

[4] In his reply, Defendant quibbles with the fact that the Government categorizes the evidence put forward in its
opposition as "not a full proffer of the venue evidence that the Government may introduce at trial," (Opp. 16, n.4),
arguing that it has made "what can fairly be described as a full proffer" of its venue evidence.  (Reply 5 (citing
*United States v. Perez*, 575 F.3d 164, 166–67 (2d Cir. 2009)), and that this permits a more rigorous assessment of
venue at the motion to dismiss stage.  *See United States v. Forrester*, No. 2-CR-302, 2002 WL 1610940, at *1
(S.D.N.Y. July 22, 2002) (finding that when "the government has provided the Court with a 'full proffer' of the facts
it intends to introduce at trial to establish venue, the Court may decide whether venue is proper before trial."
(internal quotation marks omitted)).  However, Defendant cannot show that the Government's summary of the kinds
of evidence that it intends to present at trial fits into the "extraordinarily narrow" exception to the "rule that a court
cannot test the sufficiency of the government's evidence on a Rule 12(b) motion."  *United States v. Sampson*, 898
F.3d 270, 282 (2d Cir. 2018).  Instead, I must consider the Government's summary of its evidence in its opposition
brief to be what it says it is, namely a "limited proffer" briefly summarizing anticipated evidence.  *See United States
v. Herron*, No. 10-CR-0615, 2014 WL 949008, at *1 (E.D.N.Y. Mar. 11, 2014).

"showing that the indictment alleges facts sufficient to support venue" as to conspiracy to commit wire fraud, *Peterson*, 357 F. Supp. 2d at 751.

### 2. Venue – Wire Fraud

As Defendant Cohen correctly points out in his reply brief, the above overt act analysis, *see supra* § III.A.1, "says nothing about the applicability of the substantial contacts test to the Government's substantive IAA and Wire Fraud counts." (Reply 14.) The substantial contacts test concerns "whether the criminal acts in question bear 'substantial contacts' with any given venue." *United States v. Saavedra*, 223 F.3d 85, 93 (2d Cir. 2000) (quoting *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985)). "This test takes into account four main factors: (1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding." *Id.* In other words, venue is proper if "(1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue." *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003). In order for the substantial contacts test to apply, Defendant must "argue that prosecution in the Southern District of New York caused [him] hardship, prejudice, or otherwise undermined the fairness of their trial." *Rutigliano*, 790 F.3d at 393. Absent "a showing of hardship," the substantial contacts test does not apply. *United States v. Menendez*, 759 F. Supp. 3d 460, 511 n. 20 (S.D.N.Y. 2024) (quoting *United States v. Gross*, No. 15-CR-769, 2017 WL 4685111, at *37 (S.D.N.Y. Oct. 18, 2017)).

Here, Defendant has not shown sufficient hardship to justify the invocation of the substantial contacts test. Defendant claims that he will be prejudiced by trial in New York because he lives in California, because his "anticipated defense witnesses currently live in

11

California," and because, according to him, "all of the relevant conduct occurred in California." (Mot. 24.)  Setting aside that this third rationale is of course disputed by the Government, Defendant's first two rationales do not significantly differ from those rejected in *United States v. Chait*, No. 17-CR-105, 2017 WL 6502228 (S.D.N.Y. Dec. 18, 2017), and *United States v. Teman*, 465 F. Supp. 3d 277, 320 (S.D.N.Y. 2020), *aff'd*, No. 21-CR-1920, 2023 WL 3882974 (2d Cir. June 8, 2023) (summary order).

In *Chait,* the court found that generalized allegations about "witnesses and evidence located in California," combined with a "conspicuous[] fail[ure] to identify any such witnesses or evidence with particularity," was not a sufficient showing of hardship to support the application of the substantial contacts test.  2017 WL 6502228, at *1.  In *Teman*, the court rejected the defendant's attempt to show hardship due to travel issues, as Cohen does here, noting that "[a]lthough perhaps inconvenient, [defendant's] travel does not rise to the level of hardship or prejudice, given the ease of such travel in today's time."  465 F. Supp. 3d at 320.  The relevant inquiry is not which jurisdiction Defendant would prefer to be tried in, undoubtedly California, but rather whether Defendant can show hardship above and beyond the quotidian travel requirements that inhere to our nationwide administration of justice.  Because he cannot, I find it is not required to apply the substantial contacts test here.

I need not decide the merits of the Government's arguments on the substantial contacts test, as I find that Defendant has not made a satisfactory showing of hardship.  However, even were I to apply the substantial contacts test, the Government would have met its burden at this stage of the litigation to defeat Defendant's motion to dismiss.  Indeed, the Government proffers several methods of showing venue at trial and has provided sufficient evidence such that "a reasonable jury could have found that the Government met its burden of proving venue by a

preponderance of the evidence." *See United States v. Gross*, No. 15-CR-769, 2017 WL 4685111, at *41 (S.D.N.Y. Oct. 18, 2017), *aff'd sub nom. United States v. Lebedev,* 932 F.3d 40 (2d Cir. 2019). Although *Rutigliano* did not apply the substantial contacts test, finding it unnecessary in the case of a conspiracy charge in which an overt act was alleged, *see Rutligiano*, 790 F.3d at 400, several courts from this Circuit have approvingly cited the language that "venue lies where a wire in furtherance of a scheme begins its course, continues, or ends," from *Rutigliano* and found substantial contacts exist when such factual circumstances are alleged with regard to the substantive charge of wire fraud. *See, e.g.*, *United States v. Milton*, No. 21-CR-478, 2021 WL 5304328, at *4 (S.D.N.Y. Nov. 15, 2021) (quoting *Rutigliano*, 790 F.3d at 397); *Teman*, 465 F. Supp. 3d at 314; *United States v. Aldrich*, No. 20-CR-6169, 2021 WL 3863401, at *5 (W.D.N.Y. June 3, 2021) (quoting *Rutigliano*, 790 F.3d at 397), *report and recommendation adopted*, 2021 WL 3861426 (W.D.N.Y. Aug. 30, 2021).

Defendant argues that "each and every time" courts in this Circuit that found venue sufficiently alleged in wire fraud cases, that they have not done so on the basis of a single wire passing through the District alone, and that these cases therefore do not support the proposition "that venue may lie in a district where the lone contact to the district was" the wire in question. (Mot. 20.) However, in this case, the wire is not the "lone contact" put forward by the Government, as the Government also proffers additional evidence connecting the criminal acts here to the District in their opposition brief. (*See* Opp. 14–18.) For example, the Government argues that it will be able to show venue at trial because Defendant was a financial advisor at Financial Institution-1, based in the District, the Victim Athletes received payroll wires that originated in the District, and Defendant texted wiring instructions directing Athlete-2 to wire money through the District. (*Id.*) As explained above, *see supra* at 10, n.4, this partial proffer

13

summarizing the Government's venue evidence supports the Government's ability to show reasonable foreseeability at trial.

The primary case cited by Cohen to support his claim that venue is insufficiently alleged here is a 1997 case in which the parties agreed that the substantial contacts test applied.  (*See* Mot. 30–31 (citing *United States v. Bezmalinovic*, 962 F. Supp. 435, 438 (S.D.N.Y. 1997)).)[5]  It bears mentioning that *Bezmalinovic* is not a wire fraud case and predates the Second Circuit's finding in *Rutigliano* that "venue lies where a wire in furtherance of a scheme begins its course, continues, or ends."  790 F.3d at 397.  The court in *Bezmalinovic* reached the result it did, at least in part, because, in that case, no "acts which occurred in [the Southern District] were either intended by the defendant or foreseeable to him."  962 F. Supp. at 438.  Here, I have found that the Government has met its burden to show that the conspiracy charge here was foreseeable.  *See supra* at 9–10.  So too for the substantive charge of wire fraud.  Defendant Cohen is a sophisticated actor employed at Financial Institution-1, headquartered in the Southern District, who sent multiple text messages to the Victim Athletes, requesting that they wire money through the Southern District.  (Opp. 16–18.)[6]  Thus, unlike in *Bezmalinovic*, prosecution in the Southern District would have been reasonably foreseeable to Defendant as a result of his conduct.

---

[5] Defendant claims that this case has been "twice cited with approval" by the Second Circuit.  This is not entirely accurate.  In *United States v. Kim*, the Court explained that it was not "bound by the result" in *Bezmalinovic* before distinguishing the case because the facts in *Kim* better supported an inference of foreseeability as to venue.  246 F.3d at 193.  Similarly, in *Svoboda*, the Court distinguished *Bezmalinovic* finding that "unlike *Bezmalinovic,* there is evidence suggesting that [Defendant] either knew, or could reasonably foresee, that his trades would be executed in the Southern District of New York."  *Svoboda*, 347 F.3d at 483.  No Second Circuit case has expressly endorsed the *Bezmalinovic* proposition that a wire passing through the Southern District is not sufficient to support venue.

[6] Although I analyze separately the foreseeability of venue in the Southern District for each charge of the indictment, it bears noting that no conspiracy charges were lodged in *Bezmalinovic*, and it is axiomatic that "venue is proper in a district where a co-conspirator has carried out overt acts in furtherance of that conspiracy even if the defendant never entered that district."  *See United States v. Portillo*, No. 09-CR-1142, 2014 WL 97322, at *5 (S.D.N.Y. Jan. 8, 2014).  Should the Government prove at trial a sufficient nexus between the Southern District and the alleged conspiracy to commit wire fraud propagated by Defendant Cohen and his co-conspirators to support venue, it would follow that, given the presence of this conspiracy tied to the Southern District, that prosecution in the Southern District for the related crime of substantive wire fraud would be reasonably foreseeable as well.

14

Therefore, I find *Bezmalinovic* distinguishable and no impediment to finding substantial contacts in this case. As "[a]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime," *United States v. Van Hise*, No. 12-CR-847, 2013 WL 6877319, at *5 (S.D.N.Y. Dec. 31, 2013) (quoting *Alfonso*, 143 F.3d at 776–77), the Government has adequately alleged venue as to the substantive wire fraud charge.

### 3. Venue – Investment Advisor Act Charge

"Under the Investment Advisers Act, 'venue is proper in the district wherein any act or transaction constituting the violation occurred.'" *United States v. Tuzman*, No. 15-CR-536, 2021 WL 1738530, at *25 (S.D.N.Y. May 3, 2021), *aff'd,* No. 21-2229, 2024 WL 1173044 (2d Cir. Mar. 19, 2024) (summary order) (quoting *United States v. Bergstein* ("*Bergstein I*"), No. 16-CR-746, 2018 WL 2417845, at *1 (S.D.N.Y. May 29, 2018)). Defendant argues in his motion to dismiss that the standard for proving venue under the Investment Advisor Act ("IAA"), 15 U.S.C.A. § 80b-14, is the same as that for proving venue under the Securities Exchange Act, 15 U.S.C.A. § 78aa. (Mot. 13.) Courts in the Second Circuit interpreting the relevant portion of the Securities Exchange Act have found that the language of the statute requires that this act or transaction be "an important step," in "the fraudulent scheme," *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d Cir. 1974) (internal quotation marks omitted), "or at least more than an immaterial part of the alleged violation," *First Wall St. Settlement Corp. v. Galiano*, No. 84-CV-0068 , 1985 WL 500, at *3 (S.D.N.Y. Mar. 29, 1985) (internal citations omitted). Because one other court within this Circuit has rejected a showing of venue under the Securities Exchange Act that only consisted of the wiring of funds to a bank in the District under factual circumstances specific to that case, Defendant avers that venue is insufficiently alleged here. *See*

15

*Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983) ("The only act of any kind related to the instant controversy was Leema's wire transfer of the second $250,000 payment to one of the Bank's New York correspondent accounts. This act, however, is not material.")

Defendant points to two cases in this Circuit in which courts analyzed venue under the IAA. (Mot. at 12–13; *see Tuzman*, 2021 WL 1738530, at \*25–27; *Bergstein I*, 2018 WL 2417845 at \*8.) In both *Tuzman* and *Bergstein I*, the court denied motions to dismiss for lack of venue under the IAA. In *Tuzman*, the court found that meetings between co-conspirators in furtherance of an investment adviser fraud scheme supported venue as to IAA charges at the motion to dismiss stage. 2021 WL 1738530, at \*26–27. In *Bergstein I*, the court found again that meetings in offices in New York City sufficed to support venue for IAA charges at the motion to dismiss stages. 2018 WL 2417845, at \*7–8. Defendant cites no case in his brief that supports granting a motion to dismiss an IAA charge, in particular, for failure to sufficiently allege venue.

Instead, Defendant relies on analogy to the Securities Exchange Act based on the holding of an out of circuit case that the "special venue provision of the Securities Exchange Act of 1934 is identical in all material respects to the Advisers Act special venue language," *S.E.C. v. Wallace*, 94 F. Supp. 2d 1, 2 (D.D.C. 2000). Therefore, Defendant claims I am obligated by precedent to apply the very same standards to a motion to dismiss an IAA charge as I would for an Securities Exchange Act charge.[7] Even assuming *arguendo* that the IAA venue provision is

---

[7] Defendant also cites to dicta from *Bergstein I*. (*See* Mot. 12–13.) The Court there, while analyzing venue for Securities Fraud and Investment Adviser Fraud in parallel, wrote that "[u]nder the relevant venue statutes for investment adviser fraud and securities fraud, venue is proper 'in the district wherein any act or transaction constituting the violation occurred.'" *Bergstein I*, 2018 WL 2417845, at \*7 (quoting 15 U.S.C. §§ 78aa(a); 80b–14)). It is correct that this language is the same in both 15 U.S.C. § 78aa & § 80b–14, but it is not correct that the *Bergstein I* court read in a materiality requirement or held that any act supporting venue must be an "important

16

"identical in all material respects" to the Securities Exchange Act, I find that this case is distinguishable from *Leema* and so the Government has met its burden to allege venue at this stage of the litigation, although I acknowledge that this venue determination is a somewhat closer call than the other issues decided in this Opinion & Order.

In determining whether the Government has alleged sufficient facts to support venue,[8] I start by reviewing the case that Defendant claims "effectively resolves this issue," (Mot. 14), *Tzolov*, 642 F.3d 314.  In *Tzolov*, the Government supported venue only based on the fact that the co-conspirators physically "traveled through JFK airport on their way to meet with the investors."  642 F.3d at 318.  This was because "catching flights from the Eastern District to meetings where Butler made fraudulent statements were preparatory acts," not constituent elements of the violation.  *Id.* at 319.  However, causing a wire to continue through the Southern District is not a mere "preparatory act[]."  *See id*.  As explained above, *see supra* at 7, the continuation of a wire transmission through the District was part of the act of wiring money from the initial to the final destination and may support venue just as much as if the moneys were wired to or from the District as a final destination.  As noted, there is no legally operative distinction between whether a wire begins, ends, or continues through the District.  *See supra* at 7.  Each may support venue alike.

The other case that Defendant claims supports dismissal for lack of venue is *Leema*, 575 F. Supp. 1533.  (Mot. 15–16.)  In this 1983 non-binding case, the court found that, on the facts there, a particular "wire transfer" was not sufficiently "material" to support venue under the

---

step," analogously to in-Circuit interpretations of 15 U.S.C.A. § 78aa.  *See Vesco*, 490 F.2d at 1347 (internal quotation marks omitted).

[8] All the cases that follow interpret the Securities Exchange Act rather than the IAA.  Because I find that the Government meets its burden even under this enhanced pleading standard, I need not decide whether Defendant's proposed principle that the two statutes' venue provisions are coextensive is correct as a matter of law and only assume it to be the case here.

Securities Exchange Act. *Id*. at 1537. However, Defendant places too much reliance on *Leema*, claiming it supports a blanket prohibition on the use of wire transfers through the District to support venue in cases under the Securities Exchange Act. (Mot. 16.) *Leema* granted a motion to dismiss a cross-claim brought by a defendant bank because of lack of venue when Hans Willi, a co-defendant in the action, unilaterally deposited funds in the bank's account in Manhattan. 575 F. Supp. at 1535. As the court there noted, "this transfer could have been made to an account anywhere in the United States, or anywhere in the world for that matter." *Id.* at 1537, n.1. In *Leema*, the defendant bank had no agency or control over where the funds would be sent. In one more recent case interpreting the scope of the *Leema* carve-out from venue, although not itself analyzing 15 U.S.C.A. § 78aa, the court found that venue was sufficiently alleged, as "[u]nlike in [*Leema*], where the defendant bank passively received money through an undesignated New York bank, [Defendants] both affirmatively selected New York as a location for making and/or receiving payments." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 561 (S.D.N.Y. 2004). The same principle applies here. The indictment alleges Cohen affirmatively selected New York as a location for wiring money in furtherance of his fraudulent scheme to defraud the Victim Athletes. (Ind. ¶¶ 62–63.) Because Cohen intentionally chose to use wires passing through the District, unlike in *Leema*, venue in the District should have been reasonably foreseeable to him.

For the reasons described above, *see supra* § III.A.2, the "substantial contacts" test does not apply here. Because the Government has "allege[d] that criminal conduct occurred within the venue, even if phrased broadly and without a specific address or other information," *United States v. Paduch*, No. 23-CR-181, 2024 WL 778938, at *1 (S.D.N.Y. Feb. 26, 2024) (quoting

*United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010)), I find that the Government has met its burden to survive Defendant's motion to dismiss the IAA claim for lack of venue.

### B.    The Indictment is not "Impermissibly Duplicitous"

As a second basis for dismissal, Defendant alleges that the indictment is "impermissibly duplicitous," because it combines "three separate schemes" into one charge. (Mot. 32.)  In support of his claim that the indictment impermissibly charges three separate schemes as one crime, Defendant relies on scattered language pulled from a disparate array of filings and proceedings in this matter, including a sentencing letter filed by the Government for one of Cohen's co-defendants, (*Id.* at 35 (citing Doc. 102)), a stray comment from the sentencing hearing for the same co-defendant, (*Id.*), and a brief aside from a letter motion to sever, (*Id.* at 35–36 (citing Doc. 118)).

Federal Rule of Criminal Procedure 8(a) requires that the Government charge "separate counts" for separate offenses.  Fed. R. Crim. P. 8(a).  "An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (citing *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980)).  In deciding whether a charge is impermissibly duplicitous, the question is "on the basis of the pleadings alone" whether "there is *no* set of facts . . . that could warrant a reasonable jury in finding a single conspiracy." *United States v. Gabriel*, 920 F. Supp. 498, 505 (S.D.N.Y. 1996), *aff'd*, 125 F.3d 89 (2d Cir. 1997) (emphasis in original).

Indeed, as Defendant himself recognizes, the question at this stage is not whether, as a matter of fact, the three courses of conduct at issue are distinct or separate schemes, but rather

whether they can be "characterized as part of a single continuing scheme." (Mot. 34 (citing *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cr. 1989)).) "Whether more than one conspiracy exists is a question of fact to be answered by a jury at trial." *United States v. Molina*, No. 11-CR-528, 2013 WL 2455922, at *1 (S.D.N.Y. June 5, 2013) (citing *Ohle*, 678 F. Supp. 2d at 222 & n.5); *see also Gabriel*, 920 F. Supp. at 504 ("[T]he Court of Appeals has repeatedly cautioned that the determination of whether a conspiracy is single or multiple is an issue of fact 'singularly" well suited to determination by a jury.") (collecting cases); *United States v. Johansen*, 56 F.3d 347, 350 (2d Cir. 1995) ("Whether the government has proven the existence of the conspiracy charged in the indictment and each defendant's membership in it, or, instead, has proven several independent conspiracies is a question of fact for a properly instructed jury." (citing *United States v. Alessi*, 638 F.2d 466, 472 (2d Cir. 1980))); *United States v. Maldonado–Rivera*, 922 F.2d 934, 962 (2d Cir. 1990) ("[W]here the proof is susceptible to the inference that there was more than one conspiracy, the question of whether one or more than one conspiracy has been established is a question of fact for a properly instructed jury."), *cert. denied*, 501 U.S. 1233 (1991); *United States v. Potamitis*, 739 F.2d 784, 787 (2d Cir. 1984) ("The question whether the proof establishes a single or multiple conspiracies is an issue of fact singularly well-suited to resolution by the jury." (internal quotation marks omitted)), *cert. denied*, 469 U.S. 934 (1984).

As the Government clearly lays out in their opposition, there are sufficient allegations from the indictment, (*see* Opp. 27 (citing Ind. ¶¶ 2, 4–22, 26–27, 37)), taken on its face, to find that a reasonable jury could conclude that the fraud alleged constitutes one single continuing scheme. *See Portillo*, 2014 WL 97322, at *7 (question for court on motion to dismiss for

20

duplicity was whether "the Indictment on its face sufficiently alleges a single conspiracy" (internal quotation marks omitted)).

Defendant appears to claim that because what he calls the "Non-Profit Allegations," and the "Misappropriation Allegations," (Mot. 5), only affect some, but not all, of the alleged victims of Defendant's alleged conspiracy, that I cannot find that the indictment supports a charge of one conspiracy.  (Reply 16.)  In so doing, Defendant attempts to distinguish *United States v. Bergstein* ("*Bergstein II*"), No. 16-CR-746, 2017 WL 1750392, at *2 (S.D.N.Y. May 3, 2017), a case cited by the Government in which the court "denied a defendant's motion to dismiss conspiracy, wire fraud, investment advisor fraud, and securities fraud counts as duplicitous." (Opp. 25.)  Cohen argues that because the "scheme[s]" in *Bergstein II* each "attacked the very same class of people and the very same class of assets," that they could be categorized together, and that the same is not the case here.  (Reply 16.)  However, this description of *Bergstein II* is not entirely accurate.

In *Bergstein II*, one set of fraud allegations was targeted at the defendant's co-conspirators and one was targeted at the broader set of investors in a hedge fund.  2017 WL 1750392, at *2 ("According to Bergstein, the allegations in the indictment describe two separate schemes or conspiracies: one between Bergstein and Wellner to defraud Weston investors and a second between Bergstein and others to defraud [his co-conspirators].")  This did not prevent the *Bergstein II* court from concluding that ultimately, although some acts were not directly taken against the investors as part of the underlying conspiracy, that these "misrepresentations to [his co-conspirators] simply constituted one method of carrying out the underlying conspiracy."  *Id.* at *2.  So too here.  The Government adequately alleges facts that support a conclusion that the "Non-Profit Allegations" and the "Misappropriation Allegations," can be characterized as part of

21

the same scheme as the so-called "Insurance Allegations." (Opp. 24–30.) The Government alleges harm against an "overlapping group of athletes," and alleges "[t]he same basic method of the fraud—taking advantage of the defendant's advisory and fiduciary relationships with" Victim Athletes over the same time period. (Opp. 27.)

Cohen attempts to distinguish *Bergstein II* by claiming that unlike the instant case, "all of the harm of the various efforts affected each of the investors equally and as a unified group." (Reply 16.) However, this is an incorrect characterization of that case. Bergstein's misrepresentations to his co-conspirators are not alleged to have constituted a fraud on the investor class directly, but rather to have harmed the investor class because they were part of the same continuing scheme. To claim, as Defendant does, that his alleged actions did not "attack[] the very same class of people," (Reply 16), is to put the cart before the horse in assuming that the three elements alleged by the Government do not, in fact, constitute elements of one broader underlying conspiracy to defraud the Victim Athletes in this case. If the Government can show at trial that all three schemes were part of one broader conspiracy, then, like in *Bergstein*, they can be said to have harmed, ultimately, the same class of people, i.e., the Victim Athletes.

Defendant may argue at trial that the evidence put before the jury by the Government supports a finding by the jury that there are three distinct schemes. However, the indictment clearly alleges on its face that Defendant "fraudulently induced Athletes-1, -2, and -3 to purchase viatical life insurance policies at massive markups," "fraudulently diverted from the accounts of Athletes-2 and -3 approximately $500,000 in purported donations to a non-profit organization," and "misappropriated money from Athlete-2 and used those funds to repay another client of [Defendant's]." (Ind. ¶ 2.) *See United States v. Rajaratnam*, 736 F. Supp. 2d 683, 688 (S.D.N.Y. 2010) ("If the Indictment on its face sufficiently alleges a single conspiracy, the

question of whether a single conspiracy or multiple conspiracies exists is a question of fact for the jury.")  Defendant may not succeed on a motion to dismiss an indictment for being duplicitous merely by "focus[ing] heavily on the factual recitation, which describes [multiple] schemes," *United States v. Rajarantnam*, No. 13-CR-211, 2014 WL 1554078, at *5 (S.D.N.Y. Apr. 17, 2014), and "accentuat[ing] the differences in the charged conduct, ignoring the fact that the acts are charged as part of an overarching scheme," *Portillo*, 2014 WL 97322, at *7.  *See also United States v. Brockenborrugh*, 575 F.3d 726, 737 (D.C. Cir. 2009) ("[A] single conspiracy can pursue multiple schemes . . . without dividing into multiple conspiracies, as long as there is a single objective." (internal quotation marks omitted)).  Indeed, the Government need only allege that "there is mutual dependence and assistance among the [participants], [and] a common aim or purpose."  *United States v. Tuzman*, 301 F. Supp. 3d 430, 447 (S.D.N.Y. 2017) (first alteration in original) (quoting *United States v. Vanwort*, 887 F.2d 375, 383 (2d Cir. 1989)); *see also United States v. Kaplan*, No. 23-CR-00293, 2025 WL 2200539, at *3 (E.D.N.Y. Aug. 1, 2025) ("The bare fact that Defendants allegedly used several distinct means of defrauding their clients does not establish" impermissible duplicitousness).

At the motion to dismiss stage, this suffices for the Government to meet their burden and not run afoul of Rule 8(a).  *See United States v. Conesa*, 899 F. Supp. 172, 174 (S.D.N.Y. 1995) ("[T]he fact that defense counsel chooses to characterize the alleged conduct as constituting four conspiracies, rather than one, does not vitiate the fact that the Government seeks to prove to a [] jury that a single conspiracy underlies the entire course of conduct of these defendants.").[9]

---

[9] Because I find that the Government has met its burden to show that it intends to prove one conspiracy at trial committed by Cohen, I need not decide whether he has suffered prejudice as a result of the Government's decision to charge his conduct as a part of one scheme rather than three schemes.  (*See* Opp. 30–31; Reply 17–19.)

### C. The Government Adequately Alleges that Defendant's Conduct is Covered Under the Wire Fraud Statute

Defendant's brief painstakingly lays out the history of the wire fraud statute and Supreme Court decisions that have winnowed the scope of the conduct covered by the statute (some of which were reversed by Congress by amending the wire fraud statute). (*See* Mot. 38–51.) However, as Defendant expressly acknowledges, this is not an "honest services" case, or a "right to control," case, (Mot. 38), which are the two specific exceptions carved out from the coverage of the wire fraud statute. (*See* Mot. 42-51.) Instead, Defendant appears to seek to stretch the decisions of the Supreme Court to cover a new, and to-date unrecognized, exception to the wire-fraud statute, a "secret profit" case, that he claims applies to the instant matter. (Mot. 39.)

*Skilling v. United States* is not a "secret profit" case – nowhere in the opinion do these two words appear together. *See* 561 U.S. 358 *passim* (2010). Indeed, no such category of cases exists. Instead, *Skilling* presented a limitation on the scope of "honest services" fraud cases under § 1346. *Id*. at 410 ("In light of the relative infrequency of conflict-of-interest prosecutions in comparison to bribery and kickback charges, and the intercircuit inconsistencies they produced, we conclude that a reasonable limiting construction of § 1346 must exclude this amorphous category of cases."). *Skilling* held that "the intangible right of honest services," presented in § 1346, while not unconstitutionally vague, "criminalizes *only* [] bribe[s]-and-kickback[s]." *Id.* at 405, 409 (emphasis in original). Here, however, Cohen acknowledges that the Government does not charge him "under the honest services statute." (Mot. 2 (internal quotation marks omitted).)

"Honest-services fraud differs from traditional fraud. In traditional fraud, the victim's loss is the defendant's gain." *United States v. Avenatti*, 81 F.4th 171, 193 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2598 (2024). This is a clear case of the latter, and not the former, despite

24

Defendant's lengthy discussion in his brief arguing to the contrary.  The Government's

opposition succinctly cuts through the tortured and legally unsupported arguments that

Defendant presents:

> The allegation is not—as the defendant claims without referencing relevant language in the Indictment—that Athlete-1, Athlete-2, and Athlete-3 were defrauded of their right to valuable economic information needed to make discretionary economic decisions, but, instead, that the defendant defrauded Athlete-1, Athlete-2, and Athlete-3 out of traditional property—money—that they were induced to part with through the defendant and Gilder's fraudulent statements and omissions.

(Opp. 35 (internal quotation marks omitted).)  The Government clearly alleges all three elements

of 18 U.S.C. § 1343:  "(1) a scheme to defraud, (2) money or property as the object of the

scheme, and (3) use of the mails or wires to further the scheme."  *United States v. Weaver*, 860

F.3d 90, 94 (2d Cir. 2017).  Cohen's motion portrays factual allegations that are not present in

the indictment:  that the only harm the Victim Athletes suffered as a result of Cohen's fraudulent

behavior was deprivation of material information.  However, the indictment clearly alleges that

the Victim Athletes were deprived of "approximately $5 million," not just material information.

(Ind. ¶ 2.)  The deprivation of such property as a result of Cohen's conduct is at the very

heartland of § 1343.

Cohen misconstrues the Government's indictment, appearing to claim that the

Government does not properly allege "actual harm" to the Victim Athletes aside from the

material information withheld from the Victim Athletes by Cohen.  (*See* Mot. 41.)  It is for this

reason, allegedly, that *Ciminelli v. United States*, 598 U.S. 306 (2023) controls.  (Mot. 49.)

However, the Government clearly alleges in the indictment that the Victim Athletes were

defrauded of money by Defendant's conduct.  (Ind. ¶ 2.)  The Government avers that but for

Defendant's conduct, the $5 million of which the Victim Athletes were defrauded would still be in their possession.  (*Id*.)

Cohen also appears to argue that *Skilling* requires dismissal of the wire fraud claims in the indictment.  Cohen is wrong.  Indeed, he recognizes that the indictment adequately alleges wire fraud claims in his motion when he states that "the Government is conspicuously careful not to charge this case under the 'honest services' statute, or to label it a 'right to control' theory." (Mot. 2.)  In other words, the Government charged Cohen with traditional fraud and not "honest services" fraud.  This not legal sleight of hand or a flaw in the indictment.  Self-dealing alone may not suffice for a charge of wire fraud in the wake of *Skilling*, but the defrauding of individuals out of traditional property through the fraudulent concealment of material information is still a valid predicate for such a charge.  *See United States v. An*, 733 F. Supp. 3d 77, 93 (E.D.N.Y. 2024) ("*Ciminelli* did not reject the premise that depriving a victim of information in order to induce the victim to part with traditional property can be fraud.  *Ciminelli* simply rejected the notion that information itself can be property."); *Murgio v. United States*, No. 15-CR-769, 2024 WL 4850812, at *14 (S.D.N.Y. Nov. 21, 2024) (similar).  Neither *Skilling* nor *Ciminelli* requires the dismissal of the indictment.  I find that the Government adequately alleges Cohen's conduct to be covered by the wire fraud statute.

IV.    <u>**Conclusion**</u>

For the foregoing reasons, Defendant's motion is DENIED in its entirety.  The Clerk of

Court is respectfully directed to terminate the open motion at Doc. 242.

SO ORDERED.

Dated:  December 19, 2025
        New York, New York

_____
Vernon S. Broderick
United States District Judge

27