**BLOCH & WHITE LLP**

90 BROAD STREET, SUITE 703
NEW YORK, NEW YORK 10004
(212) 702-8670
WWW.BLOCHWHITE.COM

DIRECT DIAL: (212) 901-3820
DIRECT E-MAIL: MBLOCH@BLOCHWHITE.COM

January 2, 2026

**Via ECF**
The Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007
BroderickNYSDChambers@nysd.uscourts.gov

Re:   *United States v. Cohen,* No. 23-cr-134 (VSB)

Dear Judge Broderick:

    Mr. Cohen submits this Letter Motion requesting a 30-day adjournment of the trial date. The Government, on the eve of trial, has inundated the defense with new documents, new factual allegations, new legal theories, and even a new alleged victim all of which require substantial litigation and investigation that the defense has not undertaken and could not possibly perform in time for the January 20 trial date. As recently as two days ago, the Government revealed even more documents in its possession that it has not produced. The new documents, allegations and legal theories that Mr. Cohen must process three weeks before trial imperils his right to receive fair notice of the allegations and evidence against him and, as the defense will argue in its response to the Government's motions *in limine*, is improper as a matter of law. In light of the substantial litigation, factual investigation, and additional document review that must now occur, the defense needs more than the remaining three weeks to meaningfully represent Mr. Cohen consistent with its constitutional obligations. The Government opposes this motion.

    The Indictment alleged conduct concerning one co-conspirator (Brian Gilder), three alleged victims (Parsons, Lee, and Holiday), and a discrete set of transactions (the viatical life insurance settlements, the Beast Basketball donations, and the repayment of the LLC Loan and Agent Loans). The Government has recently announced it will seek to expand its proof at trial to include new co-conspirators, a new victim, and literally hundreds of additional allegedly criminal transactions (including all expenditures by Beast Basketball of money received by the players as well as money received from an entirely unrelated Small Business Administration loan received by the non-profit). None of that includes the Government's recent alleged 404(b) allegations, which are not only close to frivolous, but even the Government admits they are still investigating and plan to produce more documents. In the past three weeks, the Government has produced more than a thousand pages of new documents that need to be reviewed and analyzed and has spoken to multiple new witnesses in the past week that relate expressly to their new claims and theories (some of whom have also provided new documents). This expanded universe of documents and allegations creates a dramatically different trial—one for which the defense has never been on sufficient notice, has not conducted investigation, and will not be prepared for on January 20th. A

request for 30 additional days process all the new data is not just necessary, but is an eminently reasonable request that imposes no prejudice on the Government.

**Exhibit List and New Documents**:

- On December 19, 2025, the Government disclosed its exhibit list. The list has marked 789 documents as potential exhibits. The documents consist of more than 142,000 pages, including nearly 127,000 pages of records reflecting the accounts of Messrs. Parsons, Holiday, and Lee. The defense asked the Government to identify which transactions detailed on the hundreds of thousands of pages it believes are relevant evidence for trial. The Government has not agreed to the request. Accordingly, in light of the limited time available, the defense has begun the extraordinary task of reviewing the records in order to be able to make informed determinations as to the probative/prejudicial value of each entry. The defense is also preparing a motion to compel the Government to narrow the scope, which is an additional expense of time and resources that takes away from other preparations. Apart from the above records, the exhibit list consists of approximately 15,000 pages of documents, some of which are new[1] and were undoubtedly in the Government's possession before the date of its Exhibit List disclosure.

- In addition to the above, the Government also, on December 11, 2025, produced to the defense another 1,255 pages of documents relating to Mr. Cohen's divorce, some of which the Government seeks to introduce, as well as more than 100 pages relating to Mr. Cohen's tax records. We understand based on recent disclosures from the Government that additional new documents are forthcoming.

**New Factual and Legal Theories**:

- In its recently filed 62-page motion *in limine*, the Government articulated for the first time both new legal theories and new factual allegations, each of which require both substantial litigation and factual investigation.

- The Government has introduced three entirely novel theories of culpability as to the Beast Basketball allegations. As this Court is aware, for three years, the Government's theory has been that Mr. Cohen fraudulently transferred funds from Messrs. Parsons

---

[1] Some of the new documents include text messages that the Government rendered in a different format from data it had previously produced to the defense in a different—and far less readable—format. The defense previously requested—a year and a half ago—whether the Government had the data "in a different and more readable format that can be produced to us, or whether this is just how the data exists." *See* Ex. A (July 3, 2024 E-mail from M. Bloch) (emphasis added). The Government assured the defense in response that "we unfortunately don't have the messages in any better format." *See* Ex. B (July 9, 2024 E-mail from K. Mead). On December 19, the Government produced the data in a different format for the first time along with its exhibit list. Rendering the data in a new format is by no means a ministerial act—each document involves judgment calls by lawyers as to (among other things) which texts are responsive to others. The defense has since had to spend time and resources both reviewing the new documents and rendering its own text messages in a similar format for trial so that the defense is not prejudiced by a dissimilar presentation of key text messages.

and Lee to Beast Basketball without their knowledge or authorization. *See* Indictment ¶ 2 ("COHEN fraudulently diverted from the accounts of Athletes-2 and -3 approximately $500,000 in purported donations to a non-profit organization, without the knowledge of Athletes-2 and -3"); *id.* at ¶ 28 ("In truth and fact, however, Athletes-2 and -3 never authorized any such transfers"). In response to a defense presentation pointing out the evidentiary infirmities of that position, the Government announced for the first time that it now intends to supplement that theory with at least three new and additional theories of fraud:

(1) That even if Messrs. Parsons and Lee *did* know of the donations, Mr. Cohen is *still* guilty of fraud because he purportedly omitted facts about what the money would be used for, including "fund[ing] the basketball aspirations of the defendant's Children." Gov't Mot. at 7. This new theory is entirely inconsistent with the Indictment—in authorizing the transfers, the athletes could not have relied on any misstatements or omissions about how the money would be spent if they in fact had no knowledge of the transfers, as the Government has alleged until now.

(2) That Mr. Cohen "continued deceiving [Mr. Parsons]" by telling Mr. Parsons (after Mr. Parsons had donated all the money) that his donations helped "a lot of future [basketball] prospects and a lot of underprivileged kids." Gov't Mot. at 8. Apparently, this constitutes an additional act of fraud because "the Government expects that the evidence at trial will show that [Mr. Cohen's] Children were neither 'future prospects' nor 'underprivileged kids.'" *Id.* This new theory fundamentally would change the nature of the case from one which was previously an "omission" case to "an affirmative misrepresentation" case.

(3) That Mr. Cohen conspired with Ramel and Taba Lloyd (newly designated as unindicted co-conspirators) to create a "slush fund" to be used to spend money on luxury items beyond what was authorized by the non-profit. According to the Government, this new conspiracy also would extend to money allegedly spent by the Lloyds that was not taken from either Mr. Parsons or Mr. Lee and which Mr. Cohen had nothing to do with whatsoever.

- The dramatic shift in the Government's theory of the case is improper and requires the defense to pursue entirely new lines of factual investigation and legal research. To be clear, the defense will be moving to preclude each of these new theories. But at the same time, in addition to the time it takes to litigate these new issues, the defense has undertaken new lines of time-consuming investigation to defend against these new claims, which has already required time and resources away from trial preparation on the issues that the defense was on notice of,[2] and will certainly not be completed in the three weeks left before trial.

- In addition to new documents and new legal theories, the Government just announced last week the addition of a new alleged victim—Lauren Holiday. As detailed in the

---

[2] Should the Court require more information about the additional steps being taken by the defense, the defense would gladly discuss them *in camera*.

indictment, the Government has claimed for three years that Mr. Cohen "orchestrated a scheme to defraud *three different professional basketball player clients* ([Mr. Holiday], [Mr. Parsons], and [Mr. Lee], respectively) of a total of over $5 million by taking advantage of his advisory and fiduciary relationships with those clients." Indictment at ¶ 2 (emphasis added).  In its motion *in limine* last week, the Government for the first time contends that Lauren Holiday, Mr. Holiday's wife, is also a victim in this case.  *See* Gov't Mot. at 1 ("All three counts relate to the defendant's multi-year scheme to defraud *four of his professional athlete clients*: [Mr. Holiday] and his spouse [Lauren Holiday], [Mr. Parsons], and [Mr. Lee].").  The addition of a brand-new alleged victim requires new and different investigation from what the defense has undertaken in the past three years.  This is particularly true where, as here, the new victim in an alleged omissions case had separate communications with each alleged co-conspirator and Morgan Stanley staff members that need to be analyzed and investigated.  The defense has never investigated this case with an understanding that the Government intended to present Lauren Holiday to the jury as one of the alleged victims in this case.  Even if the Court permits this new theory (which it should not), the defense has been spending precious time and resources to investigate these late-breaking allegations.

**404(b) Evidence:**

The Government's motions *in limine* include extensive 404(b) evidence, all of which is entirely unrelated to the allegations in this case and which the defense is moving to preclude but must investigate in the meantime anyway.  Even in prior conversations with the Government explicitly on the topic of what 404(b) evidence they intend to seek to introduce, the Government would not reveal these theories to the defense until the day their motions *in limine* were due. To name just two examples:

- First, based on the Government's motion *in limine*, the Government intends to elicit from its newly designated alleged victim Ms. Holiday a number of irrelevant factual allegations, including (i) allegations regarding Ms. Holiday's ability to authorize financial transfers in certain of the couple's shared accounts; (ii) allegations regarding Ms. Holiday's *mother's* dissatisfaction with Mr. Cohen's management of her retirement savings; and (iii) allegations that the couple engaged an outside financial firm to conduct an audit of their accounts which took "weeks or months."  Additionally, although the Government expressly informed defense counsel on a prior call that it did "not intend to introduce the results of the audit that the Holidays sought," the Government reversed course and informed the defense *two days ago* that in fact they will attempt to elicit testimony about the audit findings. Ex. C.  According to the Government, the length of this outside firm's audit process is also indicative of fraud on Mr. Cohen's part.  These allegations—which have nothing to do with the conduct alleged in the Indictment—require the defense to draft and serve subpoenas (including, now that Ms. Holiday has been identified as an alleged victim, requests to issue subpoenas under Rule 17(c)(3)) and potentially hire an additional expert to counter Ms. Holiday's contention that there was anything unusual about the audit process.

- Further, the Government not only admits that its investigation into Mr. Cohen is still ongoing, but also that additional 404(b) documents are likely forthcoming concerning (unfounded) complaints made by two prior clients ("the Football Players") against Mr. Cohen 16 years ago. The Government concedes that it possesses only "limited information" surrounding these events but insists that this limited information "suggest[s] that the defendant's alleged prior conduct resembles the way that the defendant stole money from Athlete-2 to pay off the Baseball Player in this case." Gov't Mot. at 53. The Government blithely states that Mr. Cohen will have "ample time to meet the Government's evidence on this issue" because he "himself of course is aware of the details of the Football Players' complaints." *Id.* at 54. Mr. Cohen may have been "aware" the Football Players made complaints 16 years ago, but that does not mean he knows the details of the complaints or possesses the relevant documentation. In short, Mr. Cohen's "awareness" does not obviate the need for the defense to carefully investigate the circumstances of these decades-old, unfounded, and entirely unrelated allegations as we continue to await a new production from the Government on this issue.

The Government has also indicated that more litigation is on the horizon as it intends to file at least four motions to quash defense subpoenas. Additionally, the alleged victims themselves are taking steps to prolong the service process. Mr. Parsons, while simultaneously meeting with the Government and his attorney to prepare for trial, is also actively evading service of a Court authorized defense subpoena, which has necessitated additional litigation.

Meanwhile, at least twelve defense subpoenas have been timely served but remain outstanding. Many of these are Rule 17(c)(3) subpoenas, which the defense served immediately after this Court approved them. Finally, the Government has also challenged the substance of the *Touhy* requests sent by the defense to subpoena fairly routine testimony of the FBI agents involved in this case. This, too, may require additional litigation before trial.

The Government's eleventh-hour introduction of new theories of liability, new factual allegations and new documents dramatically broaden the scope of the Government's case against Mr. Cohen. This expanded universe of allegations necessitates significant factual investigation and pre-trial litigation. Given the limited time remaining before trial, a brief adjournment is necessary to enable the defense to properly prepare for trial.

Respectfully submitted,

*/s/ Michael Bloch*

Michael L. Bloch

BLOCH & WHITE LLP
Michael L. Bloch, Esq.
90 Broad Street, Suite 703
New York, New York 10004
(212) 901-3820
mbloch@blochwhite.com